In the Matter of SEYMOUR KREISEL, an Attorney, Respondent. CO-ORDINATING COMMITTEE ON DISCIPLINE OF THE ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK et al., Petitioners.

First Department, June 30, 1964.

432

*Henry Weiner* of counsel (*Walter H. Schulman* with him on the brief), for petitioners.

*Henry McDonough* of counsel (*Zebbia Friedman, Charles Horowitz* and *Alfred Norick* with him on the brief), for respondent.

*Per Curiam.* Respondent was admitted to the Bar in the First Department in 1950. Shortly after his admission he opened an office in Bronx County and he has conducted his practice continuously since then. For the years 1954–57 he was in partnership with another lawyer. The balance of the time he practiced alone. His practice, both as a member of the partnership and as a single practitioner, has been of a neighborhood character, with the bulk of the practice consisting of personal injury cases. The latter have consisted almost entirely of matters involving minor injuries.

The petitioner, Co-ordinating Committee, has presented seven charges of professional misconduct against respondent. One of these was withdrawn. The learned Referee found in favor of the respondent on five of the charges and against him on one.

The first three charges embrace the exaggeration of injury claims by presenting false medical bills to insurance carriers, building up claims, and submitting false bills of particulars. We agree with the learned Referee that the proof submitted in support of these charges was not sufficient to sustain them. The witnesses were claimants and doctors. The testimony of the former was uncertain, of the latter evasive. We cannot say that upon the record the conclusions of the Referee were not justified, and we confirm the report as to those charges.

The fifth charge is that respondent shared legal fees with two lay adjusters. The proof is clear that respondent hired two laymen to negotiate with insurance carriers for the settlement of claims. While no claim was settled without respondent's approval, these men conducted all the negotiations with the representatives of the carrier. Their compensation was contingent on the claim being settled and represented between 5 and 10% of the amount of the settlement, depending on the difficulty of arriving at a satisfactory figure. They were paid as soon as the carrier sent its check to respondent. There can be no doubt that this conduct violates canon 34 of the Canons of Professional Ethics of the New York State Bar Association in that it constitutes a division of fees for legal services with persons who are not members of the Bar. That this is conduct which subjects a lawyer to disciplinary action cannot be disputed (*Matter of Gladstone*, 16 A D 2d 512; *Matter of Silver* v. *Assael*, 12 A D 2d 631). Respondent does not contest any of the facts but claims that these facts show only that the two laymen were messengers, hired to convey data and messages between respondent and the carriers. This contention is patently untenable. We disaffirm the finding of the Referee on this charge and find that the charge was sustained.

The sixth charge is mass solicitation of retainers. The proof was conclusive that one insurance broker referred 168 cases to respondent and 62 others to his firm. Two other brokers referred 126 cases to the firm. Four doctors referred 145 cases to respondent and 75 others to the partnership. There was further proof that respondent's business cards were kept available by persons who were likely to come in contact with victims of accidents, and presented to these people. There was no proof that any of these people were paid anything by respondent, but respondent conceded freely that he performed legal services for the people who referred matters to him at reduced prices or for no fee at all. He also made it a point to entertain them at lunch and the like at frequent intervals. In fact the partnership on its income tax returns took deductions amounting to $16,200 for such expenses, and respondent took similar deductions amounting to $9,650.

It is respondent's contention that he succeeded in becoming a popular figure in the neighborhood by these methods and the matters were referred to him as a consequence. There is no doubt that obtaining cases as a result of the efforts of friends or neighbors as a matter of good will is neither reprehensible nor discountenanced (*Matter of Schacht*, 228 App. Div. 226). But that is not the situation here.

434

It is not always a simple matter to distinguish between what is valid neighborhood appreciation, with the concomitant referral of matters to the beneficiary, and mass solicitation. Here we have, as shown above, an unusual number of cases referred by a comparatively small number of individuals. In addition, we have a disproportionate entertainment expense, admittedly used to curry favor with these and others likely to refer business. It has been determined that these are weighty factors in reaching a conclusion of mass solicitation, even in the absence of proof that a consideration passed in any specific case (*Matter of Shufer*, 12 A D 2d 208, 211, 212; *Matter of Schacht*, 228 App. Div. 232, 238). We disapprove the finding of the Referee on this charge and find that it was sustained.

The last charge, refusal to co-operate with the committee in the investigation into the charges, was sustained by the Referee. We agree. The record shows that the respondent sought all manner of excuses not to make available his files and office records to the committee and finally flatly refused to produce anything. He continued this attitude at the hearing by an incredible statement that his attorney obtained the consent of the petitioner to a withdrawal of its requests and preventing the attorney from testifying by the assertion of privilege. The explanations were not believable.

We conclude that respondent's conduct has been unethical. True, he has not acted contrary to the interests of any client. But the manner in which he has conducted his practice cannot but fail, if countenanced, to bring the Bar into disrepute.

Respondent should be suspended for a period of one year.

BREITEL, J. P., VALENTE, STEVENS, EAGER and STEUER, JJ., concur.

Respondent suspended for a period of one year.